

**Fox Rothschild LLP**
ATTORNEYS AT LAW
Mail: P. O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648-2311
Tel (609) 896-3600  Fax (609) 896-1469
www.foxrothschild.com

Office Managing Partner
Gerard P. Norton, Ph.D, Esq.

JOHN C. ATKIN
Direct No:  609.895.3327
Email: JAtkin@FoxRothschild.com

03/22/2019

<u>**Via ECF**</u>

The Honorable Cathy L. Waldor
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

    Re:  **Strike 3 Holdings, LLC v**. **John Doe subscriber assigned IP address 24.0.13.70**
       <u>**Dkt. No. 2:18-cv-10619-KM-CLW**     </u>

Judge Waldor:

  As you know, we represent Plaintiff Strike 3 Holdings, LLC ("Strike 3") in the above-referenced matter.  Please accept the following letter brief, along with the Declaration of Emilie Kennedy (dated Mar. 22, 2019), attached as **Exhibit A**; and (2) the Declaration of Tobias Fesier (dated Mar. 19, 2019), attached as **Exhibit B**, in response to Your Honor's request at the March 12, 2019 hearing for supplemental submissions in further support of Strike 3's opposition to Defendant's Motion to Quash [ECF No. 11].

  As a preliminary matter, it is vital that Strike 3's reliance on Maxmind, Inc.'s ("Maxmind") geolocation service be understood in its proper role in this litigation.  Strike 3 relied on Maxmind to (1) establish a *prima facie* showing that the District of New Jersey is the court with personal jurisdiction over Defendant, and (2) determine which internet service provider ("ISP") assigned the IP address to Defendant (*i.e.*, to determine who was the appropriate ISP to seek to serve a subpoena upon).  Therefore, this submission addresses itself to questions that may exist concerning Strike 3's use of Maxmind, which are:  (1) how does Maxmind's geolocation service work; (2) has Strike 3 established a *prima facie* case of personal jurisdiction by relying on Maxmind; and (3) if so, has Defendant offered any evidence whatsoever to rebut that *prima facie* showing of personal jurisdiction.

The Honorable Cathy L. Waldor
March 22, 2019
Page 2

## I.      HOW MAXMIND'S GEOLOCATION SERVICE WORKS

Maxmind is an industry-leading provider of IP address intelligence and online fraud detection tools.  S*ee* Ex. A at ¶ 9.  Maxmind's geolocation service is not "software," *per se*, but rather a proprietary database of information collected from ISPs by Maxmind for use in its ISP tracing service.  *Id.* at ¶ 10. Maxmind compiles information it receives from ISPs concerning the IP addresses they assign to their subscribers, by city and state.  *Id.* at ¶ 10, *see also id.* at ¶¶ 5-6. Maxmind maintains and updates this proprietary database on a weekly basis, which is accessible to government agencies and members of the public for a fee.[1]  *Id.* at ¶ 10.

When a user enters an IP address into Maxmind's ISP tracing service, Maxmind compares that IP address to the city-and-state records it has collected from ISPs to determine where the subscriber assigned that IP address is approximately located as of its last update.  According to Maxmind, its IP address tracing service is approximately "95% accurate in the US."  *Id*. at ¶ 15. Its basic geolocation tracing service is "99.8% accurate on a country level, 90% accurate on a state level, 87% accurate on a city level for the US within a 50 kilometer radius." *Id.* at ¶ 16.  However, Maxmind's GeoIP2 Precision Web Services – the service used by Strike 3 in its copyright infringement lawsuits – is Maxmind's "most accurate data at a city/postal code level, geolocating 9% more IPs [to] the correct postal code and 4% more IPs to the correct city in the United States than the GeoIP2 Downloadable Databases." *Id*.  Indeed, Maxmind's accuracy and reliability is proven in this District:  out of the 194 cases Strike 3 has filed in the District of New Jersey where an ISP has responded to a subpoena and provided the name and address of a defendant, Maxmind has correctly traced the John Doe Defendant to a location within this Court's jurisdiction *every single time*.  *Id.* at ¶¶ 21-24, Ex. 1.

In other words, Maxmind is akin to services that offer a reverse look-up in the white pages of the phone book using a caller's telephone number.  But instead of searching for a person's name with a telephone number, Maxmind allows users with an IP address to find its approximate city-and-state location, and the ISP that assigned it.

---

[1] Maxmind is routinely used by local and federal law enforcement agencies for the same purpose it is used by Strike 3:  to determine which locality/agency has proper jurisdiction to prosecute Internet crimes.  *See, e.g. United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008); *United States v. Richardson*, 4:11CR3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012); *Aguilar v. Parris*, No. 3:16-CV-00779, 2016 WL 5373532, at (M.D. Tenn. Sept. 26, 2016).  It is also used by advertising companies to direct advertising at users by location, and by businesses to determine the approximate locations of users that visit their websites.  *See* Ex. A, at ¶¶ 12-13.

The Honorable Cathy L. Waldor
March 22, 2019
Page 3

**II.   STRIKE 3'S RELIANCE ON MAXMIND'S GEOLOCATION SERVICE ESTABLISHES A *PRIMA FACIE* CASE OF PERSONAL JURISDICTION OVER DEFENDANT**

After receiving confirmation from Strike 3's investigator, IPP International UG ("IPP"),[2] that a specific IP address is being used to repeatedly and persistently infringe on Strike 3's copyrighted works at specific times,[3] *see* Ex. A, ¶¶ 7, 9, 17,  Strike 3 must then determine which ISP assigned that IP address, and which court has jurisdiction over the user of that IP address, in order to file suit and seek leave to conduct early discovery to learn the name and exact location of the subscriber assigned the IP address at issue.  *Id.* at ¶ 14.

Personal jurisdiction and venue in copyright litigation depend on the location of the infringer.  *See* 28 U.S.C. § 1400(a); *Vasquez v. Torres Negron*, 434 F. Supp. 2d 199, 202 (S.D.N.Y. 2006); *Strike 3 Holdings, LLC v. Doe*, No. 18-47, 2018 WL 1427002, at *5 (S.D. Cal. Mar. 22, 2018).  The initial burden to establish personal jurisdiction rests on Strike 3 as the plaintiff. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).  "A *prima facie* showing of personal jurisdiction requires that [a plaintiff] establish with reasonable particularity sufficient contacts between the defendant and the forum state." *Doe v. Chiquita Brands Int'l, Inc.*, No. 07-3406, 2018 WL 497322, at *3 (D.N.J. Jan. 19, 2018) (citation and internal punctuation omitted); *accord Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987) (citing *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir. 1985)).  Since at this stage the defendant is anonymous and identifiable only through his or her IP address, to meet this burden Strike 3 uses Maxmind's geolocation service to determine (1) in which court's jurisdiction the Defendant resides and (2) which ISP assigned the subscriber the IP address, that is, the entity that Strike 3 should request leave to serve a subpoena upon.

It is well-established that "geolocation services may be used to estimate the location of Internet users based on their IP addresses."  *Strike 3 Holdings, LLC v. Doe*, 325 F.R.D. 499, 503 (D.D.C. 2018) (internal quotations and citations omitted).  "A showing that the internet account associated with an IP address that allegedly engaged in infringing activity is located in [the district] is sufficient to establish *prima facie* personal jurisdiction over the alleged infringer." *DigiProtect USA Corp. v. Does*, No. 10-8760, 2011 WL 4444666, at *3 (S.D.N.Y. Sept. 26, 2011).  As other courts have observed, although these services are not "100% accurate," they provide "a good faith basis to believe a putative defendant may be [a district] resident if a geolocation service places his/her IP address within the [district.]" *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40

---

[2] IPP stands for "Intellectual Property Protection."  Ex. A at ¶ 7, n.3.

[3] Strike 3 is careful to provide the exact time of infringements down to the very second, double verified by Strike 3's forensic team at 7Rivers, to ensure there are zero errors, to avoid misidentifications.  *Id*. at ¶ 8 (citing ECF No. 7-4).

The Honorable Cathy L. Waldor
March 22, 2019
Page 4

(D.D.C. 2011).  Indeed, some courts even confirm an IP addresses geolocation *sua sponte* using such generally available websites like www.iplocation.net.  *Strike 3 Holdings, LLC v. Doe*, No. 19-73, 2019 WL 777416, at *1 n.1 (S.D. Cal. Feb. 21, 2019).

When Strike 3 received IPP's report that IP address 24.0.13.70 was being used on May 13, 2018 at 14:04:09 UTC[4] to infringe upon of Strike 3's works, it entered that IP address into Maxmind's proprietary database on May 17, 2018 at 23:24:42 UTC – four (4) days later – and confirmed that it was traceable to a location in New Jersey.  *Id.* at ¶ 17.  Prior to drafting and filing its Complaint, Strike 3 again used Maxmind's database to confirm that IP address 24.0.13.70 continued to trace to a location in New Jersey.  *Id.* at ¶ 18.  After the pleadings were drafted, IPP continued to report infringement from IP address 24.0.13.70, as late as June 10, 2018.  Ex. B.

### III. DEFENDANT OFFERS NOTHING TO REBUT STRIKE 3'S *PRIMA FACIE* SHOWING

At this juncture, Strike 3's burden is to plead sufficient factual matter which, if accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content *that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged*." *Id.* (emphasis added).  This is particularly true where, as here, Plaintiff "is in essence seeking jurisdictional discovery." *Strike 3 Holdings, LLC v. Doe*, 325 F.R.D. 499, 501 (D.D.C. 2018) (citation omitted).

Strike 3's reliance on Maxmind comports with the liberal pleading standard set forth in *Twombly*/*Iqbal*.  It is clearly plausible that Defendant is liable for the alleged misconduct and located in this District because (1) the IP address assigned to Defendant by his or her ISP was used to infringe upon Strike 3's copyrights, and (2) that IP address was traced to a location in this District, multiple times, using reliable and accurate geolocation services.  *See Malibu Media*, No. 16-1739, 2017 WL 1050573 at *2 (denying motion to dismiss and holding "[i]t is plausible that files downloaded using a particular IP address were downloaded by the subscriber of that address

---

[4] Strike 3 has recorded numerous instances of infringement by this IP address.  [ECF No. 1-1]; Ex. B.  However, because listing each and every instance that a single bit was transferred via BitTorrent would require several pages of data, Strike 3 instead lists a single instant of recorded infringement for each work in Exhibit A of its complaint [ECF No. 1-1], and similarly only request that ISPs review a single instance of infringement in their records when Strike 3 serves subpoenas on them.  It is of no moment that Strike 3's subpoena does not request subscriber information associated with every single recorded time of infringement (*i.e.*, starting in May 2017); once Strike 3 has Defendant's name and address, and determines that a good faith basis still exists to proceed, Strike 3's discovery requests to Defendant will seek information concerning these earlier acts of infringement.

4

The Honorable Cathy L. Waldor
March 22, 2019
Page 5

[and the] possibility that a family member, guest, or neighbor may have downloaded the [motion pictures] does not render Plaintiff's claims implausible.").

At the March 12, 2019 hearing Defendant argued that Strike 3's reliance on Maxmind was misplaced because Strike 3 did not perform a geolocation trace at the *exact* time of Defendant's downloads, but this argument misses the mark for four (4) reasons.

First, the "gap" between (1) the last recorded infringement alleged in the Complaint and (2) Strike 3's first utilization of Maxmind, is a mere four days. Ex. A. at ¶ 17. IPP's last recorded infringement from IP address 24.0.13.70 – as alleged in the Complaint – occurred on May 13, 2018 at 14:04:09 UTC. [ECF No. 1-1].[5] Strike 3 first utilized Maxmind to geolocate that IP address on May 17, 2018 at 23:24:42 UTC. Ex. A. at ¶ 17.

Second, Defendant's ISP searched its records when it received Strike 3's subpoena, requesting the name and address of the subscriber assigned IP address 24.0.13.70 on May 13, 2018 at 14:04:09 UTC, and determined that *Defendant* was the subscriber assigned that IP address on that date and time. A true and correct copy of Comcast's response to the subpoena is attached hereto as **Exhibit C**. Accordingly, the ISP sent the notice of the subpoena to *Defendant*. *See* [ECF No. 11-2].

Third, Defendant's argument fails to account for the fact that although May 13, 2018 at 14:04:09 UTC was the *latest* recorded infringement identified in Strike 3's initial complaint, IPP continued to record infringement of Strike 3's works from this IP address *after* that date, and *after* Strike 3 used Maxmind to determine Defendant's location on May 17, 2018. Ex. B. The latest recorded infringement using this IP address occurred on June 10, 2018 (four days before Strike 3's complaint), and IPP has not recorded a single infringement using this IP address after Comcast sent the subpoena notice to Defendant on August 30, 2018. Ex. B; [ECF No. 11-2].

In other words, for Defendant's argument to prevail, the Court would have to accept:

1. That someone other than Defendant was assigned the IP address from May 11, 2017 to May 13, 2018 and used the IP address to infringe on Strike 3's works during that time period, despite the fact that when Defendant's ISP received Strike 3's subpoena, requesting the name and address of the subscriber assigned IP address 24.0.13.70 on May 13, 2018 at 14:04:09 UTC, the ISP reviewed its records and sent notice of the subpoena to *Defendant* and not some other person, *see* [ECF 11-2]; Ex. C, evidencing that Defendant was the subscriber assigned the IP address on that date and time;

---

[5] IPP's investigation shows that this IP address was used to infringe upon Strike 3's works from as early as May 11, 2017. [ECF No. 1-1.]

5

The Honorable Cathy L. Waldor
March 22, 2019
Page 6

2. That within a four (4) day window, the ISP decided to reassign that IP address to Defendant, and that Maxmind's weekly update of its database occurred after this re-assignment, so that it now returned Defendant's approximate location, rather than the "true" infringer, when this IP address is entered in its service (a possibility that is, again, foreclosed by the fact that the ISP's records indicate *Defendant* was the subscriber assigned this IP address on the relevant date and time, *see* [ECF 11-2]; Ex. C);

3. After the alleged "re-assignment" of the IP address to Defendant, a user *other* than Defendant somehow – through an unknown technology that is beyond the knowledge of Strike 3's expert, *see* [ECF No. 18-1] – used the newly-assigned IP address to *also* infringe on Strike 3's copyrighted works, just like the last user, *i.e.*, that there is a *second* "true" infringer of Strike 3's works, who just happens to also not be Defendant; and,

4. This second user, who presumably did not receive the notice from the ISP (since it was only sent to Defendant's address), decided to stop using this IP address to infringe on Strike 3's works shortly after the ISP sent notice of the subpoena to Defendant.

This series of unlikely coincidences is not only implausible, it strains credulity.

And, of course, Defendant submits no factual support that this improbable scenario occurred – (1) no evidence that he or she was not assigned the IP address from May 2017 to June 2018; (2) no evidence that the ISP's own records are wrong that Defendant was assigned IP address 24.0.13.70 on May 13, 2018 at 14:04:09 UTC; (3) no evidence that the ISP re-assigned the IP address to Defendant during the four-day window in May 2018; and (4) no evidence that Defendant's computer was the target of some heretofore unheard of artifice that allowed someone else to *continue* to infringe on Strike 3's copyrighted works using Defendant's assigned IP address after it was re-assigned to Defendant.  Instead, Defendant offers only attorney argument, in the form of camp fire stories, of what "might" have happened – but this is plainly insufficient.  *See Malibu Media, LLC v. John Does 1-18*, No. 12-07789, 2014 WL 229295, at *8 (D.N.J. Jan. 21, 2014) (denying motion to quash and observing that "[i]f any defendant could quash a subpoena based on the mere possibility that someone else has used the defendant subscriber's IP address to perpetuate the alleged infringement then a plaintiff would be unable to enforce its rights.") (citation and internal quotation marks omitted).

Indeed, with respect to Strike 3's reliance on Maxmind specifically, Defendant offers literally nothing to rebut Strike 3's *prima facie* showing, despite being in possession of dispositive evidence of whether Maxmind accurately located them within the District.  *See R.Q.C. Ltd. v. JKM Enterprises, Inc.*, No. 13-307, 2014 WL 4792148, at *7 (W.D. Pa. Sept. 23, 2014) (finding that

The Honorable Cathy L. Waldor
March 22, 2019
Page 7

because defendant failed to "supply any evidence" rebutting plaintiff's assertion of personal jurisdiction over defendant, that the court "may properly exercise specific personal jurisdiction over [defendant] at this stage in the proceedings"). Defendant could definitively settle the question of Maxmind's accuracy in this case by merely submitting an un-redacted copy of ECF No. 11-2 to the Court for *in camera* review, yet he or she inexplicably does not, despite Defendant's counsel's professional obligation "to disclose to the tribunal a material fact" if they know "that [its] omission is reasonably certain to mislead the tribunal[.]"  NJ RPC 3.3(a)(5).

## **CONCLUSION**

Defendant's strategy is to confuse the Court concerning the technical issues present in this case in the hope that the Court will throw its hands up and announce that BitTorrent is the perfect vehicle for copyright infringement; that the Courts are powerless to stop it. But that is not the case. Although the technology underlying Strike 3's cases is sophisticated, the general concepts behind why Strike 3 uses it are not.

Strike 3 employs IPP to identify IP addresses that are infringing on its works using BitTorrent. It uses Maxmind to identify the court that has jurisdiction over the user of that IP address, and the ISP that assigned it to them. It files suit in the correct court, uses the accurate and reliable information it has to show good cause to obtain early discovery from the ISP, and after receiving the name and address of the subscriber, investigates whether it *still* has a good faith basis for proceeding against them. That is the next step in this litigation, and nothing in Defendant's motion papers or arguments should stop it from proceeding.

Strike 3 respectfully submits that its reliance on Maxmind satisfies its burden of establishing a *prima facie* case of personal jurisdiction over Defendant, which Defendant has failed to rebut. Accordingly, for all the foregoing reasons, and for the reasons set forth in Strike 3's opposition to the motion to quash and response to the Order to Show Cause, Strike 3 respectfully requests that the Court order that Defendant's Motion to Quash be denied.

                Respectfully submitted,

                */s/ John C. Atkin*

                John C. Atkin

Encl.
cc: All Counsel of Record (via ECF)